Citation Nr: 1138406 
Decision Date: 10/14/11 Archive Date: 10/19/11

DOCKET NO. 09-29 087 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUES

1. Whether new and material evidence has been submitted to reopen a claim for service connection for left ear hearing loss. 

2. Entitlement to service connection for tinnitus. 

3. Entitlement to a disability evaluation in excess of 10 percent for right ear hearing loss. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

D. M. Ames, Counsel


INTRODUCTION

The Veteran had active service from January 1962 to January 1965.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania. The rating decision denied the Veteran's petition to reopen his claim for left ear hearing loss, denied service connection for bilateral tinnitus, and continued the 10 percent evaluation for right ear hearing loss. 

The Veteran testified at a Travel Board hearing in support of his claims in July 2011 before the undersigned Veterans Law Judge. A copy of the transcript has been associated with the claims file. 


FINDINGS OF FACT

1. All relevant evidence necessary for an equitable disposition of the Veteran's appeal has been obtained. 

2. The Veteran's claim for service connection for left ear hearing loss was denied in December 1994. He did not appeal that decision. 

3. Evidence received since the December 1994 denial is not cumulative or redundant of evidence previously considered and relates to an unestablished fact necessary to substantiate the claim, and therefore raises a reasonable possibility of substantiating the claim. 

4. The competent medical evidence of record does not show that the Veteran has hearing loss in his left ear that meets the criteria to be considered as a disability for VA purposes. 

5. The Veteran has not been shown to have tinnitus that manifested in service or that is causally or etiologically related to his military service. 

6. The competent and credible evidence of record shows that the Veteran has Level XI hearing loss in his right ear. 


CONCLUSIONS OF LAW

1. The December 1994 decision denying service connection for left ear hearing loss is final. 38 U.S.C.A. § 7105 (West 2002); 38 C.F.R. §§ 3.104, 3.160(d), 20.200, 20.302, 20.1103 (2010). 

2. New and material evidence has been received since the December 1994 rating decision. 38 U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.156(a) (2010).

3. Service connection for left ear hearing loss is not warranted. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 5107 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.385 (2010). 

4. Bilateral tinnitus was not incurred or aggravated in service. 38 U.S.C.A. §§ 1101, 1110, 1131, 5107 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2010). 

5. The criteria for a rating higher than 10 percent for right ear hearing loss have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002 and Supp. 2010); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.383, 3.385, 4.1-4.14, 4.85, 4.86, Diagnostic Code (DC) 6100 (2010).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2010).

A. Duty to Notify

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant of the information and evidence not of record that is necessary to substantiate the claim, and to indicate which information and evidence VA will obtain and which information and evidence the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). VCAA notice requirements apply to all five elements of a service connection claim, including: (1) Veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 486 (2006). For claims, as here, pending before VA on or after May 30, 2008, 38 C.F.R. § 3.159 was amended to eliminate the requirement that VA also request that a claimant submit any evidence in his or her possession that might substantiate the claim. See 73 Fed. Reg. 23,353 (Apr. 30, 2008). 

The notice provided by VA must be given prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006) (Mayfield II); Pelegrini v. Principi, 18 Vet. App. 112 (2004) (Pelegrini II). However, if VCAA notice was not provided prior to the initial adjudication of the claim or, if provided, was inadequate or incomplete, such an error can be "cured" by providing any necessary notice and then readjudicating the claim, including in a Statement of the Case (SOC) or Supplemental Statement of the Case (SSOC), such that the intended purpose of the notice is not frustrated and the Veteran is given ample opportunity to participate effectively in the adjudication of the claim. See Mayfield v. Nicholson, 499 F.3d 1317, 1323 (Fed. Cir. 2007) (Mayfield IV); Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006). Defective timing or content of VCAA notice is not prejudicial to a claimant if the error does not affect the essential fairness of the adjudication. Sanders v. Nicholson, 487 F.3d 881, 889 (Fed. Cir. 2007), rev'd on other grounds, Shinseki v. Sanders/Simmons, 556 U.S. __ (2009).

With regard to the Veteran's petition to reopen his claim for service connection for left ear hearing loss, the October 2008 VCAA notice letter informed the Veteran of what constituted new and material evidence. The Veteran was informed that new evidence must be evidence that was submitted to VA for the first time. He was informed that material evidence must pertain to the reason the claim was previously denied. The letter explained that his claim was previously denied because the evidence did not show that he had hearing loss in his left ear. Therefore, there is no prejudice to the Veteran. Kent v. Nicholson, 20 Vet. App. 1 (2006). 

With regard to the Veteran's claims for service connection, VA has satisfied its VCAA duty to notify by issuing predecisional notice letters for his claims in July 2008, September 2008, and October 2008. The letters advised the Veteran of what evidence was required to substantiate his claims, and of his and VA's respective duties for obtaining evidence. The predecisional September 2008 and October 2008 letters provided notice regarding the disability evaluation and effective date elements of a service connection claim. Dingess, 19 Vet. App. at 473. 

With regard to claims for increased disability ratings for service-connected conditions, the law requires VA to notify the claimant that, to substantiate a claim, the claimant must provide, or ask VA to obtain, medical or lay evidence demonstrating a worsening or increase in severity of the disability. 38 U.S.C.A. 
§ 5103(a); 38 C.F.R. § 3.159(b); Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008), vacated and remanded sub nom. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). 

The claimant must be notified that, should an increase in disability be found, a disability rating will be determined by applying relevant Diagnostic Codes, which typically provide for a range in severity of a particular disability from noncompensable to as much as 100 percent (depending on the disability involved), based on the nature of the symptoms of the condition for which disability compensation is being sought, their severity and duration. Finally, the notice must provide examples of the types of medical and lay evidence that the Veteran may submit (or ask the VA to obtain) that are relevant to establishing her or his entitlement to increased compensation. However, the notice required by section 5103(a) need not be specific to the particular Veteran's circumstances; that is, VA need not notify a Veteran of alternative diagnostic codes that may be considered or notify of any need for evidence demonstrating the effect that the worsening of the disability has on the particular Veteran's daily life. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009).

In this case, the RO provided the Veteran with a predecisional letter in September 2008. Pelegrini II, 18 Vet. App. at 112. Moreover, the requirements with respect to the content of the notice were met in this case. The notice letter notified the Veteran that, to substantiate a claim for increased compensation, the claimant must provide, or ask VA to obtain, medical or lay evidence demonstrating a worsening or increase in severity of the disability. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Vazquez- Flores v. Peake, 22 Vet. App. 37 (2008), vacated and remanded sub nom. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The notice also provided examples of the types of medical and lay evidence that the Veteran may submit (or ask the VA to obtain) that are relevant to establishing her or his entitlement to increased compensation. 

In addition, the RO notified the Veteran in the notice letter about the information and evidence that VA will seek to provide. In particular, the September 2008 letter indicated that reasonable efforts would be made to help him obtain evidence necessary to support his claim, including that VA would request any pertinent records held by Federal agencies, such as military records, and VA medical records. The Veteran was also informed that a medical examination would be provided or that a medical opinion would be obtained if it was determined that such evidence was necessary to make a decision on his claim.

The RO also informed the Veteran about the information and evidence that he was expected to provide. Specifically, the September 2008 letter notified the Veteran that he must provide enough information about his records so that they could be requested from the agency or person that has them. It was also requested that he complete and return the enclosed VA Form 21-4142, Authorization and Consent to Release Information to the Department of Veterans Affairs, if there were any private medical records that he would like VA to obtain on his behalf. In addition, the September 2008 letter stated that it was his responsibility to ensure that VA receives all requested records that are not in the possession of a Federal department or agency.

In March 2010, a follow up notice letter was issued which summarized the above discussed notice requirements. The Veteran's claims were subsequently readjudicated in the May 2011 SSOC. 

B. Duty to Assist

The Board finds that the duty to assist provisions of the VCAA have been met with respect to the issues on appeal. All available service treatment records (STRs) have been obtained and associated with the Veteran's claims folder. Further, all relevant treatment records adequately identified by the Veteran have been procured and associated with his claims folder. 

He testified at a Travel Board hearing in July 2011. The RO provided the Veteran VA examinations in October 2008, March 2010, and August 2010 in connection with his claim for service connection for left ear hearing loss and tinnitus. See McLendon v. Nicholson, 20 Vet. App. 79 (2006), Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). 

The Compensation and Pension (C&P) hearing examination worksheets were revised to include a discussion of the effect of the Veteran's hearing loss disability on occupational functioning and daily activities. See Revised Disability Examination Worksheets, Fast Letter 07-10 (Dep't of Veterans Affairs Veterans, Apr. 24, 2007); see also 38 C.F.R. § 4.10 (2008). In addition to dictating objective test results, the Court (or spell if first time) has held that a VA audiologist must fully describe the functional effects caused by a hearing disability in his or her final report. Martinak v. Nicholson, 21 Vet. App. 447, 455 (2007). 

In this case, the October 2008 examination report did include statements regarding the impact of the Veteran's hearing problems on his occupation and daily life. Specifically, he stated that he had a hard time hearing, even while wearing his hearing aids. The March 2010 examination report noted that the Veteran had difficulty hearing conversations and had to turn the volume on his television up too loud. Although the August 2010 report did not include such statements, it is noted that it was a follow-up examination solely for the purpose of providing the Veteran with another opportunity to cooperate with the examiner and provide accurate test results. 

Moreover, in Martinak, the Court noted that even if an audiologist's description of the functional effects of the Veteran's hearing disability was somehow defective, the Veteran bears the burden of demonstrating any prejudice caused by a deficiency in the examination. There have been no allegations of any prejudice caused by a deficiency in the examinations. Indeed, the Veteran has been represented throughout the course of the appeal, yet the documents submitted do not contain any such assertion. Id., at 455-456. 

While none of these examinations produced results which are sufficient for adjudication purposes, the deficiencies are due to the Veteran's own lack of cooperation with the testing. As discussed in more detail below, the Veteran has shown a consistent unwillingness to cooperate with VA audiological examinations. As the Veteran's own behavior, not any deficiency by VA, has made the October 2008, March 2010, and August 2010 VA audiological examinations insufficient for adjudication purposes, the Board finds that the duty to assist has been satisfied with respect to the provision of medical examinations. "[T]he duty to assist is not always a one-way street. If a Veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence." Wood v. Derwinski, 1 Vet. App. 190, 193 (1991).

Accordingly, the Board finds that VA has done everything reasonably possible to notify and to assist the Veteran in the development of his service connection and increased evaluation claims. Under the circumstances of this case, additional efforts to assist the Veteran in accordance with the VCAA would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991). 

II. New and Material Evidence Claim

Although the RO determined in the May 2011 SSOC that new and material evidence was presented to reopen the claim for service connection for left ear hearing loss, this decision is not binding on the Board. The Board must consider the question of whether new and material evidence has been received because it goes to the Board's jurisdiction to reach the underlying claims and adjudicate them de novo. Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2001). If the Board finds that no such evidence has been offered, that is where the analysis must end. Barnett v. Brown, 83 F.3d 1380 (Fed. Cir. 1996); McGinnis v. Brown, 4 Vet. App. 239 (1993) (Board reopening is unlawful when new and material evidence has not been submitted). 

In December 1994, the RO denied the Veteran's claim for service connection for left ear hearing loss. He was notified of the decision and of his appellate rights, but he did not submit a notice of disagreement. In general, rating decisions that are not timely appealed are final. 38 U.S.C.A. § 7105 (West 2002); 38 C.F.R. §§ 3.104, 3.160(d), 20.200, 20.302, 20.1103 (2010). The December 1994 rating decision denied entitlement to service connection for left ear hearing loss because no such disability was shown. 

In order to reopen a claim which has been denied by a final decision, the claimant must present new and material evidence. 38 U.S.C.A. § 5108. For applications to reopen filed after August 29, 2001, as was the application to reopen the claim in this case, new and material evidence means evidence not previously submitted to agency decisionmakers; which relates, either by itself or when considered with previous evidence of record, to an unestablished fact necessary to substantiate the claim; which is neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and which raises a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). To reopen a previously disallowed claim, new and material evidence must be presented or secured since the last final disallowance of the claim on any basis, including on the basis that there was no new and material evidence to reopen the claim since a prior final disallowance. See Evans v. Brown, 9 Vet. App. 273, 285 (1996). For purposes of reopening a claim, the credibility of newly submitted evidence is generally presumed. See Justus v. Principi, 3 Vet. App. 510, 513 (1992) (in determining whether evidence is new and material, "credibility" of newly presented evidence is to be presumed unless evidence is inherently incredible or beyond competence of witness). However, this presumption of credibility only applies with regard to whether the evidence is sufficient to reopen the claim. 

Since 1994, VA has received VA treatment records, the reports of the Veteran's October 2008, March 2010, and August 2010 VA examinations, and the transcript of his July 2011 Travel Board hearing. All of this evidence is new, in that it has not been submitted to VA before. Further, some of the VA treatment records are material because they pertain to the reason his claim was previously denied. 38 C.F.R. § 3.156(a). Specifically, an April 2009 VA otolaryngology treatment record showed that the Veteran's tympanometry indicated normal eardrum mobility with acoustic reflexes present in his left ear, except at 4000 Hz. A September 2009 VA otolaryngology treatment records show that the Veteran had reported a history of left ear hearing loss for many years. For the purposes of reopening his claim only, his reported history is considered credible. 

Accordingly, the Board finds that new and material evidence has been submitted, and the claim for service connection for left ear hearing loss is reopened. 38 U.S.C.A. § 5108. 



III. Service Connection Claims

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

In order to establish service connection for the claimed disorder, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical, or in certain circumstances, lay evidence of a nexus between the claimed in-service disease or injury and the current disability. See 38 C.F.R. § 3.303; see also Hickson v. West, 12 Vet. App. 247, 253 (1999); Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). The determination as to whether these requirements are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. See Baldwin v. West, 13 Vet. App. 1, 8 (1999). 

Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all of the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (finding that the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis herein focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (holding that the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran). 

The Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Caluza v. Brown, 7 Vet. App. 498, 506 (1995); Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify"). 

VA is required to give due consideration to all pertinent medical and lay evidence in evaluating a claim for disability benefits. 38 U.S.C.A. § 5107(b). Regarding lay evidence, the type of evidence that will suffice to demonstrate entitlement to service connection, and the determination of whether lay evidence may be competent to satisfy any necessary evidentiary hurdles, depends on the type of disability claimed. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007). Laypeople are competent to describe observable symptomatology. Layno v. Brown, 6 Vet. App. 465, 469 (1994). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when a layperson is competent to identify the medical condition, the layperson is reporting a contemporaneous medical diagnosis, or lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). Regarding nexus, although without describing specific situations, the Federal Circuit also has explicitly rejected the view that medical evidence is necessarily required when the determinative issue is etiology. Id., at 1376-77. In short, the Board cannot determine that lay evidence as to diagnosis and nexus lacks credibility merely because it is unaccompanied by contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006).


A. Left Ear Hearing Loss

Certain chronic diseases, including sensorineural hearing loss, may generally be presumed to have been incurred during service if manifested to a compensable degree within one year of separation from active military service. 38 U.S.C.A. 
§§ 1112 , 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. In this case, the evidence does not show that, within one year of separation from service, the Veteran had left ear hearing loss which met the statutory thresholds to be considered as a disability for VA purposes. Therefore, presumptive service connection is not warranted. 

Although service connection for left ear hearing loss may not be granted on a presumptive basis, the Board must also consider whether it was incurred on a direct basis. See Combee v. Brown, 34 F.3d 1039, 1042 (Fed Cir. 1994). For the reasons discussed below, there is no competent, credible evidence that the Veteran has hearing loss in his left ear that meets the statutory threshold for it to be considered as a disability for VA purposes. For VA purposes, impaired hearing will be considered a disability when the auditory threshold for any of the frequencies of 500, 1000, 2000, 3000 and 4000 Hertz is 40 decibels or greater; the auditory thresholds for at least three of these frequencies are 26 decibels or greater; or speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

As noted above, the Veteran has undergone multiple VA audiology examinations and accurate results could not be obtained due to his unwillingness to cooperate with the examiners. As such, the results of his examinations cannot be used in the adjudication of his claim. 

In October 2008, the Veteran underwent a VA examination. He reported having no hearing in his right ear and hearing loss in his left ear. He reported that his hearing loss began in service, when he was exposed to an explosion. He stated that his hearing in his right ear did not improve after the incident, but that his left ear did. The results of his audiogram indicated that his hearing in his left ear was within normal limits. His pure tone thresholds, in decibels, were reported as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
30
25
40
95
95
LEFT
10
10
10
15
20

The average pure tone threshold was 30 in the right ear and 15 in the left ear. Speech audiometry revealed speech recognition ability of 68 percent in the right ear and 100 percent in the left ear. 

When discussing the results of the Veteran's audiology test, the examiner stated, "[i]t should be noted that during initial testing today, the Veteran gave inconsistent and unreliable responses. He had to be reinstructed until it was felt that his thresholds were accurate." The examiner concluded that his left ear hearing loss was within normal limits. 

In April 2009, a VA otolaryngology consultation report, the Veteran reported left ear hearing loss since service. The physician discussed the results of the October 2008 VA examination and noted," initial responses [during the October 2008 examination] were not consistent, and indeed today, [the Veteran] felt that he could not hear ... words correctly in his better ear, even though he could follow conversation easily at normal conversational level. No further behavioral testing was attempted." Tympanometry indicated normal eardrum mobility bilaterally with acoustic reflexes present in both ears except at 4000 Hz in the left ear. Otoacousitc emissions had large vigorous responses on the left side. 

In September 2009, a VA otolaryngology consultation report noted that the Veteran had a long history of hearing loss dating back to his period of military service. The physician specifically noted a "longstanding history of left sided hearing loss dating back to basic training camp. He reports hearing loss after an explosion in the service. The left ear recovered but the right ear never did." The physician concluded that his left sided hearing loss was "likely secondary" to acoustic trauma. However, the otolaryngology consult did not include audiological testing and instead referenced the October 2008 VA examination with no discussion of the examiner's finding that the results were not reliable. 

In March 2010, the Veteran underwent a second VA audiological examination. At the outset, the examiner stated that the results should not be used for rating purposes. The examiner explained, "[i]t should be noted that the Veteran was able to follow conversations easily at normal listening levels without the benefit of his eyeglass hearing aids." His pure tone thresholds, in decibels, were reported as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
45
40
60
95
25
LEFT
20
20
20
20
25

The average pure tone threshold was 74 in the right ear and 21 in the left ear. Speech audiometry revealed speech recognition ability of 0 percent in the right ear and 90 percent in the left ear. 

The examiner stated that the results of the audiogram were not suitable for rating purposes because of "inconsistent responses and frequent re-instruction for the patient." 

Otoacoustic emissions were robust in the left ear at all frequencies, consistent with normal outer hair cell function. Middle ear evaluation revealed normal function bilaterally with a stapedial reflex present at normal levels at 1000 Hz, ipsilaterally in both ears. 

The examiner stated that the results, as reported, "indicate hearing within normal limits in the left [ear] and in the right ear a mild to profound mixed hearing loss. However, in summary, the Veteran was unable or unwilling to perform in behavioral testing with sufficient reliability to determine true auditory thresholds or speech recognition ability." 

In August 2010, the examiner underwent a third VA examination. The examiner noted that the results from his March 2010 examination were "unreliable and could not be used for rating purposes." Further, the examiner stated that "[i]t should be noted that [the Veteran] has had a history of inaccurate audiological results dating back to '08. Today's evaluation is the fourth attempt to determine his true hearing thresholds." 

The examiner found that the audiological results, as reported, indicated "predominantly moderately severe to profound hearing loss in the right ear and a moderately severe hearing loss in the left ear." His pure tone thresholds, in decibels, were reported as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
60
70
75
100
No reply
LEFT
55
60
60
60
60

The average pure tone threshold was 70 in the right ear and 50 in the left ear. Speech audiometry revealed speech recognition ability of 16 percent in the right ear and 52 percent in the left ear. 

The examiner stated, "[i]t is evident that once again, [the Veteran] did not provide his true hearing thresholds. When I was speaking with [the Veteran] under the headphones he was able to hear me in his left ear well within normal limits but would not repeat words until they were very amplified in the left ear. Therefore an approximation of [the Veteran's] hearing will be formed." The examiner elaborated that the otoacoustic emissions tested in March 2010 "indicated essentially normal hearing in the left ear at all frequencies used." The examiner reiterated, that the Veteran's " exact hearing thresholds again cannot be determined," and that his "[s]peech recognition scores were felt to be unreliable." 

The examiner concluded that the Veteran's hearing in his left ear was "essentially within normal limits at all frequencies reported." 

At his July 2011 Travel Board hearing, the Veteran testified that a grenade explosion damaged his hearing. He stated that his left ear hearing was damaged at first, but then improved after the incident, while his right ear did not. However, he asserted that he has had decreased hearing in his left ear since the incident in service. His representative argued that the August 2010 VA examination discussed above was inadequate because his pure tone thresholds could not be determined and his speech recognition scores were unreliable. 

The Board finds that the Veteran's left ear hearing loss does not meet the statutory thresholds required for it to be considered as a disability for VA purposes. 38 C.F.R. § 3.385. The results from his October 2008 and March 2010 audiograms, though considered to be unreliable due to poor cooperation, still do not show a hearing loss severe enough to meet the criteria set forth in 38 C.F.R. § 3.385. The results of the August 2010 audiogram, if competent, would meet the criteria for consideration as a disability for VA purposes. Id. 

However, the Board finds that the Veteran's statements regarding continuity of symptomatology and reported hearing examination results are not credible, and as a result, his VA examinations are not competent medical evidence. 

VA examiners and an otolaryngologist have determined that the Veteran's responses to audiological testing were inaccurate, inconsistent, and unreliable. As such, they are not afforded any probative weight in favor of his claim. See Evans v. West, 12 Vet. App. 22, 30 (1998); Caluza v. Brown, 7 Vet. App. 498, 511, 512 (1995), aff'd per curiam, 78 F.3d. 604 (Fed. Cir. 1996) (determining the weight to be assigned to evidence, credibility can be affected by inconsistent statements, internal inconsistency of statements, inconsistency with other evidence of record, facial implausibility, bad character, interest, bias, self-interest, malingering, desire for monetary gain, and witness demeanor). The evidence of record shows that he has continued to be uncooperative with VA audiological testing and actively attempted to exaggerate the severity of his symptoms. 

Pure tone audiological results are reported directly based on the Veteran's own statements regarding his ability to hear. Accordingly, as the Veteran's own statements regarding audiological symptomatology have been found to be incredible, the Board also finds the October 2008, March 2010, and August 2010 VA examinations to be incompetent. See Coburn v. Nicholson, 19 Vet. App. 427, 432 (2006) (holding that reliance on a Veteran's statement renders a medical report incredible only if the Board rejects the statements of the Veteran). Although a September 2009 VA otolaryngology consultation report provides some evidence in support of his claim because the physician stated that the Veteran's left ear hearing loss was related to service, that statement is afforded little probative weight because the Veteran's statements as they relate to his hearing loss are not credible. Id. Further, the September 2009 otolaryngology consultation does not contain the results of audiological testing, which is required to determine whether the Veteran's reported left ear hearing loss meets the threshold criteria to be considered a disability for VA purposes under 38 C.F.R. § 3.385. 

In short, the evidence of record demonstrates that the Veteran has repeatedly attempted to exaggerate his symptomatology. The Board will thus not presume any audiological examinations to be competent unless they do not include any indications that the Veteran exaggerated his symptomatology or was otherwise uncooperative. 

The Board is within its province to weigh lay testimony and to make a credibility determination as to whether that evidence supports a finding of service incurrence and continuity of symptomatology sufficient to establish service connection. Barr, 21 Vet. App. at 303. The Veteran has reported continuity of symptomatology since service. However, in the absence of reliable test results, VA examiners have estimated that his hearing in his left ear is within normal limits. When weighed against the statements of VA examiners and an otolaryngologist, the Veteran's statements regarding continuity of symptomatology are not credible. 

Further, the Veteran is the claimant in this case, thus he has an interest in the outcome of that upon which he has opined. This interest in the outcome impacts negatively on his credibility and further reduces the weight of his opinion. Cartwright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("Although interest may affect the credibility of testimony, it does not affect competency to testify."); see also Caluza v. Brown, 7 Vet. App. 498, 511 (1995). 

Therefore, there is no competent evidence of record to show that the Veteran has hearing loss in his left ear that meets the statutory threshold set forth in 38 C.F.R. § 3.385, and as a result, his claim for service connection for hearing loss in his left ear must be denied. In reaching this decision, the Board considered the doctrine of reasonable doubt. However, as the preponderance of the evidence is against the Veteran's claim, the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

B. Tinnitus

The Veteran asserts that his tinnitus began after he was exposed to an explosion that caused his service-connected right ear hearing loss. Although he was exposed to noise in service, which caused his right ear hearing loss, he has not assessed as having a current diagnosis of tinnitus by medical professionals. 

At a December 2008 VA ear, nose, and throat consultation, the Veteran reported intermittent ringing in his right ear that resolved upon removing the battery from his right hearing aid. 

At an April 2009 VA otolaryngology consultation, the Veteran again complained of intermittent ringing in his right ear that resolved when he removed the battery from his hearing aid. 

At his March 2010 VA examination, the Veteran denied tinnitus. At August 2010 VA examination, the examiner noted, "[t]here was no complaint today of tinnitus and when he was in here in '08, again there was not complaint of tinnitus." 

At his July 2011 Travel Board hearing, the Veteran testified that he had ringing in his ears. He asserted that the ringing was caused by his hearing aid because it amplified all sounds, and that he relieves this problem by not wearing his hearing aid. When asked whether the claimed tinnitus was related to using his hearing aid, the Veteran responded in the affirmative. He testified that when he was not wearing his hearing aid, he only noticed it "a little bit." 

The Veteran's service treatment records are negative for references to tinnitus. Nevertheless, the Veteran is competent to testify to experiencing symptoms that are observable by a lay person, which would include "ringing in the ears" or tinnitus. See Charles v. Principi, 16 Vet. App. 370, 374-75 (2002). Although the Veteran is competent to report ringing in his ears, his statements have been found to be not credible, for the reasons discussed above. Evans, 12 Vet. App. at 30; Caluza, 7 Vet. App. at 511, 512; Coburn, 19 Vet. App. at 432; Cartwright, 2 Vet. App. at 25. 

Further, his reports of tinnitus have been inconsistent and health care providers have interpreted his description as a problem with his hearing aid rather than diagnosing him with tinnitus. 

The Board notes that the first report of ringing in the ears was in 2009, more than 30 years after his separation from service. This is evidence against the Veteran's claim for service connection for tinnitus. See Maxson v. West, 12 Vet. App. 453 (1999), aff'd, 230 F.3d 1330 (Fed. Cir. 2000) (service incurrence may be rebutted by the absence of medical treatment of the claimed condition for many years after service).

Although the Veteran is competent to state he has a ringing sensation in his ears, he has not been shown to have a diagnosis of tinnitus at any time. The existence of a current disability is the cornerstone of a claim for VA disability compensation. 38 U.S.C.A. § 1110, 1131; see Degmetich v. Brown, 104 F. 3d 1328, 1332 (1997) (holding that interpretation of sections 1110 and 1131 of the statute as requiring the existence of a present disability for VA compensation purposes cannot be considered arbitrary). Evidence must show that the Veteran currently has the disability for which benefits are being claimed. Because the medical evidence does not establish that the Veteran has a current diagnosis of tinnitus in this case, the Board finds that he is not entitled to service connection for tinnitus. 

The only evidence of record supporting the Veteran's claim that he has tinnitus due to service are his own lay opinions. The Veteran, however, is not shown to possess the requisite medical training, expertise, or credentials needed to render a diagnosis or a competent opinion as to medical causation. Accordingly, his lay opinion does not constitute competent medical evidence and lacks probative value. See Espiritu v. Derwinski, 2 Vet. App. 492, 494-95 (1992). Further, as his statements regarding his symptoms are found to be not credible, as discussed above, they lack probative value for that reason as well. Evans, 12 Vet. App. at 30; Caluza, 7 Vet. App. at 511, 512; Coburn, 19 Vet. App. at 432; Cartwright, 2 Vet. App. at 25. 

Therefore, there is no competent, credible evidence of record to show that the Veteran has bilateral tinnitus, and as a result, his claim for service connection for tinnitus must be denied. In reaching this decision, the Board considered the doctrine of reasonable doubt. However, as the preponderance of the evidence is against the Veteran's claim, the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

IV. Entitlement to a Disability Evaluation in Excess of 10 Percent for Hearing Loss in the Right Ear. 

Disability ratings are determined by applying the criteria established in VA's Schedule for Rating Disabilities, which is based upon the average impairment of earning capacity. Individual disabilities are assigned separate Diagnostic Codes (DC). 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.1, 4.20 (2010). 

Where an increase in an existing disability rating based upon established entitlement to compensation is at issue, the present level of disability is the primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994). Where the evidence contains factual findings that demonstrate distinct time periods in which the service connected disability exhibited diverse symptoms meeting the criteria for different ratings during the course of the appeal, the assignment of staged ratings would be necessary. See Hart v. Mansfield, 21 Vet. App. 505 (2007). 

Impaired hearing will be considered a disability only after threshold requirements are met. See 38 C.F.R. § 3.385. Once a disability is established, levels of hearing loss are determined by considering the pure tone threshold average and speech discrimination percentage scores, resulting in a Roman numeral designation for hearing loss. 38 C.F.R. § 4.85(b), Table VI. Disability ratings are assigned by combining the level of hearing loss in each ear. 38 C.F.R. § 4.85(e), Table VII. See Lendenmann v. Principi, 3 Vet. App. 345 (1992) (assignment of disability ratings for hearing impairment are derived by a mechanical application of the rating schedule to the numeric designations assigned after audiometric evaluations are rendered).

When, as in this case, service connection is in effect only for hearing loss in one ear, the hearing acuity in the non-service-connected ear must be regarded as normal for rating purposes, absent VA-defined hearing loss (which is not shown in this case). 38 U.S.C.A. § 1160(a)(3) (West 1991); 38 C.F.R. §§ 3.383(a)(3), 3.385, 4.85(f). See also VAOGCPREC 32-97. 

Table VI, "Numeric Designation of Hearing Impairment Based on Puretone Threshold Average and Speech Discrimination" is used to determine a Roman numeral designation (I through XI) for hearing impairment in each ear based on consideration of speech discrimination as well as pure tone threshold averages, unless the examiner certifies that use of the speech discrimination test is not appropriate. In that case, table VIa, "Numeric Designation of Hearing Impairment Based Only on Puretone Threshold Average" is used. Table VII, "Percentage Evaluation for Hearing Impairment" is then used to determine the percentage evaluation by combining the Roman numeral of each ear, with the non-service connected ear assigned a Roman numeral designation of I, subject to the provisions of § 3.383 (which are not applicable in this Veteran's case as his hearing acuity in his left ear is considered to be normal for VA rating purposes). 38 C.F.R. §§ 3.383, 3.385, 4.85(b). 

If the Veteran has either of two exceptional pattern of hearings impairment, the Roman numeral value is determined using both Table VI and VIa. 38 C.F.R. § 4.86. This method is used if the Veteran's pure tone threshold at each of the four specified frequencies is 55 decibels or more, or if the Veteran's pure tone threshold is 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz. Whichever table results in a higher Roman numeral value is used to calculate a disability evaluation using Table VII. Id. 

As noted above, the Veteran has undergone three VA examinations in an attempt to obtain accurate, reliable pure tone thresholds and speech recognition scores. For the reasons discussed above, the results of his examinations may not be used to support his claim for an increased evaluation. Evans, 12 Vet. App. at 30; Caluza, 7 Vet. App. at 511, 512; Coburn, 19 Vet. App. at 432; Cartwright, 2 Vet. App. at 25. 

At his October 2008 VA examination, the results of which were noted to be inconsistent and unreliable, the pure tone thresholds in his right ear were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
30
25
40
95
95

The pure tone threshold average in his right ear was 30 decibels and his speech recognition was 68 percent. The examiner stated that the audiogram indicated mild sensorineural hearing loss in the right ear up to 2000 Hz and then sloping to profound hearing loss at higher frequencies. The reported results of the examination correspond to Level IV hearing loss. 38 C.F.R. § 4.85, Table VI. The results of the October 2008 examination do not conform to an exceptional pattern of hearing impairment. 38 C.F.R. § 4.86. 

At his March 2010 VA examination, the results of which were noted to be not usable for rating purposes, the pure tone thresholds in his right ear were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
45
40
60
95
25

The pure tone threshold average in his right ear was 74 decibels and his speech recognition was 0 percent, as he could not repeat any words at the most comfortable listening level. The results of this examination correspond to Level XI hearing loss. 38 C.F.R. § 4.85, Table VI. The results of the March 2010 examination do not conform to an exceptional pattern of hearing impairment. 38 C.F.R. § 4.86. The examiner noted that middle ear evaluation revealed normal function with a stapedial reflex present at normal levels at 1000 Hz. Further, otoacoustic emissions were conducted and the right ear showed absent high frequency emissions and slightly reduced emissions within the low frequencies, consistent with outer hair cell damage. But, there was a robust emission present at 1000 Hz in the right ear. In light of the unreliable audiogram evaluation, the examiner found that the Veteran had a mild to profound mixed hearing loss in his right ear. 

At his August 2010 VA examination, which was noted to be unreliable and not usable for rating purposes, the pure tone thresholds for the right were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
60
70
75
100
No reply

The pure tone threshold average in his right ear was 70 decibels and his speech recognition was 16 percent. The reported results of the examination correspond to Level XI hearing loss using Table VI. 38 C.F.R. § 4.85, Table VI. The results of the August 2010 examination conform to an exceptional pattern of hearing impairment(a). 38 C.F.R. § 4.86. Using Table VIa, the reported results of the examination correspond to Level VI hearing loss, which is less favorable to the Veteran and as a result, would not be used if the examination were competent. Id. 

During the entirety of the appeals period, the Veteran has not cooperated with VA examiners so that true auditory thresholds and speech recognition ability could be reported. As a result of him not providing credible statements or reliable results, there is no competent medical evidence of record that the Board may use to evaluate the current level of his right ear hearing loss. 

Before he filed his claim in November 2008, his most recent VA audiological examination was in November 1996. The results of that examination resulted in a continuation of his 10 percent evaluation in a November 1996 rating decision. The examination showed his right ear pure tone average to be 94 decibels, and his speech recognition score was 0 percent. No assessment of the reliability or accuracy of the results was made and the examination was used to evaluate his level of hearing impairment. The results of the examination corresponded to Level XI hearing loss using Table VI. 38 C.F.R. § 4.85, Table VI. 

Applying a Roman numeral value of XI in the right ear and I in the non-service-connected left ear results in a 10 percent evaluation under Table VII. 38 C.F.R. § 4.85. As there is no competent evidence of record to measure the Veteran's pure tone thresholds or speech recognition ability, his hearing is found to warrant a 10 percent evaluation, and no higher. 

The Board notes that even if the results of his VA examinations were accepted as competent medical evidence, his claim would not be granted. Even with Level XI hearing loss, which is the most severe level of hearing loss described in 38 C.F.R. § 4.85, his evaluation would remand at 10 percent because he is not service-connected for left ear hearing loss. As a result, his left ear hearing loss is represented as Level I. Under Table VII, Level I hearing loss in one near and Level XI hearing loss in the other ear warrants a 10 percent evaluation. 38 C.F.R. § 4.85, Table VII. 

Based upon the foregoing, the Board finds that the preponderance of the evidence is against the claim, and a disability evaluation in excess of 10 percent for right ear hearing loss must be denied. 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The Veteran has not met the requirements for a higher rating at any time during the appeal period, so the Board may not stage his rating. Hart, 21 Vet. App. at 505. 

The Board finds that there is no basis for referral for consideration of an extra-schedular rating in this case. 38 C.F.R. § 3.321(b)(1) (2010). The Veteran has not presented any evidence that his right ear hearing loss results in a unique disability that is not addressed by the rating criteria. The Veteran's right ear hearing loss was evaluated under 38 C.F.R. § 4.85, Diagnostic Code 6100, the criteria of which is found by the Board to specifically contemplate the Veteran's level of disability and symptomatology. As noted above, the Veteran's right ear hearing loss is manifested by Level XI hearing loss. When comparing this disability picture with the symptoms contemplated by the Schedule, the Board finds that the Veteran's symptoms are more than adequately contemplated by the disabilities rating for his right ear hearing loss. A rating in excess of the currently assigned rating is provided for certain manifestations of hearing loss, but the medical evidence reflects that those manifestations are not present in this case. The criteria for a 10 percent rating for the Veteran's right ear hearing loss more than reasonably describe his disability level and symptomatology and, therefore, the currently assigned schedular evaluation is adequate. Further, there is no evidence of frequent hospitalization or medical interventions. Thus, there is no basis for referral of the case for consideration of an extraschedular disability evaluation. See Thun v. Peake, 22 Vet. App 111, 115-16 (2008); see also Bagwell v. Brown, 9 Vet. App. 337 (1996). 

Lastly, the Court has held that a request for a total rating based upon individual unemployability (TDIU), whether expressly raised by Veteran or reasonably raised by the record, is not a separate "claim" for benefits, but rather, can be part of a claim for increased compensation. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). In other words, if the claimant or the evidence of record reasonably raises the question of whether the Veteran is unemployable due to a service-connected disability for which an increased rating is sought, then part and parcel with the increased rating claim is the issue whether a TDIU is warranted as a result of that disability. Id. 

In this case, the Veteran has not asserted, and the evidence does not show that the Veteran's right ear hearing loss has caused unemployability. The Veteran testified that following service he worked for many years as a broadcast engineer and retired from working in shipyards. Because there is no evidence of unemployability, further consideration of entitlement to TDIU is not required. Jackson v. Shinseki, 587 F.3d 1106 (Fed. Cir. 2009). 



ORDER

As new and material evidence has been submitted, the petition to reopen the claim of entitlement to service connection for left ear hearing loss is granted to this extent only. 

Service connection for left ear hearing loss is denied. 

Service connection for tinnitus is denied. 

A disability evaluation in excess of 10 percent for right ear hearing loss is denied. 



____________________________________________
D. C. SPICKLER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs